WILLIAM N. FRY, JR., AND MABLE W. FRY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM STOKES WALTERS AND MILLY FRY WALTERS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 61844, 61845. Filed December 12, 1958.

---

*Charles H. Davis, Esq.*, for the petitioners.
*Lester R. Uretz, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* The Commissioner determined the following deficiencies in income tax:

| Calendar year | Docket No. 61844 | Docket No. 61845 |
|---|---|---|
| 1952 | $4, 691. 70 | $4, 691. 70 |
| 1953 | 4, 198. 79 | 4, 198. 83 |
| 1954 | 4, 226. 64 | 4, 226. 64 |

The sole question for decision is whether petitioners, the sole remaindermen of a trust estate consisting of stock in a corporation, who purchased intervening life interests in the estate are entitled to recover their cost through amortization over the terms of the life interests.

All of the facts are stipulated and the stipulation of facts together with the pertinent exhibits are included herein by this reference.

The pertinent facts may be summarized as follows:

Petitioners William N. Fry, Jr., and Mable W. Fry are husband and wife residing in Memphis, Tennessee. They filed joint Federal income tax returns for the calendar years 1952, 1953, and 1954 with the district director of internal revenue, Nashville.

Petitioners William Stokes Walters and Milly Fry Walters are husband and wife residing in Memphis, Tennessee. They filed joint Federal income tax returns for the calendar years 1952, 1953, and 1954 with the district director of internal revenue, Nashville.

William Walter Fischer (hereinafter referred to as W. W. Fischer) died testate in 1942. Under the terms of his will, petitioners William N. Fry, Jr., and Milly Fry Walters were the sole remaindermen in equal shares of all of the stock in Fischer Lime & Cement Company owned and held in the W. W. Fischer Trust Estate, a testamentary trust created by decedent's will.

Petitioner Milly Fry Walters is the same person as Merle Millicent Fry Walters referred to in the will of W. W. Fischer.

The will of W. W. Fischer provided, among other things, that upon the death of the last survivor of certain income beneficiaries; namely, Eugenia Hatfield, Mollie Christrup, Frederick A. Fischer, Thelia Bina Fischer, and Julia Fry, the W. W. Fischer Trust Estate was to terminate and all of the stock of Fischer Lime & Cement Company

was then to be delivered in equal shares to petitioners Milly Fry Walters and William N. Fry, Jr., free of trust.

Item VIII of the will of W. W. Fischer provided that the net income of the trust estate should be distributed and paid by the trustees as follows:

(1) Out of the moneys coming into the hands of the trustees, there first shall be paid by said trustees the sum of Three Hundred Fifty ($350.00) Dollars per month to Eugenia Hatfield for and during the term of her natural life.

(2) In the event the said Eugenia Hatfield shall predecease her mother, Mollie Christup, out of the moneys coming into the hands of the trustees there next shall be paid by said trustees the sum of One Hundred ($100.00) Dollars per month to the said Mollie Christup for and during the term of her natural life.

(3) Out of the moneys coming into the hands of the trustees, there next shall be paid by said trustees the sum of One Hundred Fifty ($150.00) Dollars per month to my brother, Frederick A. Fischer, for and during the term of his natural life.

(4) In the event the said Frederick A. Fischer shall predecease his wife, Thelia Fischer, out of the moneys coming into the hands of the trustees there next shall be paid by said trustees the sum of One Hundred ($100.00) Dollars per month to the said Thelia Fischer for and during the term of her natural life.

(5) Out of the moneys coming into the hands of the trustees, there next shall be paid by said trustees the sum of Fifty ($50.00) Dollars per month for the use and benefit of William N. Fry III, which said payments of $50.00 per month shall continue until the said William N. Fry III shall attain the age of sixteen (16), at which time said payments shall be increased to One Hundred ($100.00) Dollars per month and shall continue at said rate of $100.00 per month until the said William N. Fry III attains the age of twenty-one (21), at which time said payments for the use and benefit of the said William N. Fry III shall cease. Said payments shall be made by my said trustees to the father of the said William N. Fry III or, in the discretion of my said trustees, to a duly constituted and appointed guardian of the said William N. Fry III.

If the trusts herein created shall terminate prior to the time that the said William N. Fry III reaches the age of twenty-one (21), if he lives to attain such age, my trustees are directed to make provision for the payment of said monthly portions for the use and benefit of the said William N. Fry III, but the termination of the trusts herein created shall not be delayed by reason of the said William N. Fry III not having attained such age of twenty-one (21) prior to the termination of said trusts.

(6) Out of the moneys coming into the hands of the trustees, there next shall be paid by said trustees the sum of Three Hundred Fifty ($350.00) Dollars per month to my sister, Julia Fry, for and during the term of her natural life.

(7) If the remaining net income from the trust estate shall be in excess of Five Hundred ($500.00) Dollars per month, all such net income in excess of $500.00 per month shall be accumulated by my said trustees as a part of the corpus of the trust estate. All net income not in excess of $500.00 per month shall be divided by my said trustees in the following proportions and shall be paid to or for the use and benefit of the following beneficiaries:

One-fifth ($\frac{1}{5}$) to William N. Fry III;

Two-fifths ($\frac{2}{5}$) to Merle Millicent Fry Walters;

Two-fifths ($\frac{2}{5}$) to William N. Fry, Jr.

If the net income from the trust estate shall be insufficient to pay the monthly portions hereinabove set forth in sections (1) to (7) inclusive, the first income

produced by the trust estate shall be used to pay the portions herein provided in the order listed. * * *

As of December 31, 1949, all of the income beneficiaries of the W. W. Fischer Trust Estate were alive, to wit:

Eugenie Hatfield
Mollie Christrup
Frederick A. Fischer
Thelia Fischer
William N. Fry III
Julia Fry
Petitioner Milly Fry Walters
Petitioner William N. Fry, Jr.

In 1949 petitioners began negotiations looking toward the purchase of the income interests of the other beneficiaries of the trust. These negotiations were completed in that year and the income interests were purchased for a total consideration of $150,465.80 which was paid between December 8 and December 13, 1949.

Immediately following the purchase, all stock of Fischer Lime & Cement Company owned by the W. W. Fischer Trust Estate was turned over by the executors and trustees and delivered in equal shares, free of trust, to petitioners as remaindermen under the will. Petitioners thereby became the sole stockholders of the company.

Petitioners William N. Fry, Jr., and Milly Fry Walters each received dividends from Fischer Lime & Cement Company of $25,000 during each of the 3 years here in controversy as well as during each of the years 1949, 1950, and 1951.

At the time of purchase by William N. Fry, Jr., and Milly Fry Walters of the income rights of the respective beneficiaries the age, nearest birthday, of the respective life income beneficiaries was as follows:

| | |
|---|---|
| Julia Fry | 68 |
| Eugenie Hatfield | 61 |
| Mollie Christrup | 77 |
| Frederick A. Fischer | 65 |
| Thelia Fischer | 64 |

The net earnings of Fischer Lime & Cement Company and its subsidiaries during the calendar years 1942 to 1954, inclusive, ranged from a low of $167,669.29 to a high of $984,780.25.

During the calendar years 1942 to 1944, inclusive, Fischer Lime & Cement Company paid no dividends. During the years 1945 to 1954, inclusive, it paid dividends each year ranging from a low of $37,500 to a high of $50,000.

For the calendar years 1952, 1953, and 1954, petitioners claimed as deductions on their respective income tax returns the following amounts, representing amortization of the cost to them of purchasing

the income rights of the beneficiaries of the W. W. Fischer Trust Estate:

| Year | William N. Fry, Jr., and Mable W. Fry | William Stokes Walters and Milly Fry Walters |
|------|---------------------------------------|---------------------------------------------|
| 1952 | $7, 002. 52 | $7, 002. 53 |
| 1953 | 6, 502. 53 | 6, 502. 52 |
| 1954 | 6, 502. 53 | 6, 502. 52 |

By notice of deficiency dated January 18, 1956, the Commissioner disallowed the deductions claimed by the petitioners Walters with respect to the amortization, and determined income tax deficiencies as the result thereof in the following amounts:

1952 ---------------------------------------------------- $4, 691. 70
1953 ---------------------------------------------------- 4, 198. 83
1954 ---------------------------------------------------- 4, 226. 64

By notice of deficiency dated January 19, 1956, the Commissioner disallowed the deductions claimed by the petitioners Fry with respect to the amortization, and determined income tax deficiencies as the result thereof in the following amounts:

1952 ---------------------------------------------------- $4, 691. 70
1953 ---------------------------------------------------- 4, 198. 79
1954 ---------------------------------------------------- 4, 226. 64

If the respective petitioners are entitled to income tax deductions representing amortization of the cost to them of purchasing the income rights of the beneficiaries of the W. W. Fischer Trust Estate, the amounts of such deductions to the respective petitioners are stipulated.

The Commissioner states his argument as follows: It is respondent's contention that when a remainderman purchases a life or other terminable interest standing ahead of his remainder interest the purchased interest merges with the remainder into complete and absolute ownership. Accordingly, for tax purposes there being no intervening limited interests to amortize after the merger, the capital invested in the purchase of the now extinct life estates and the estate for years can be recouped only at the time of the sale or other disposition of the petitioners' stock in Fischer Lime & Cement Company by adding to petitioners' sliding basis in the stock, the amounts paid for the purchased interests.

However, this contention runs head on into *Bell* v. *Harrison*, (C. A. 7) 212 F. 2d 253, which the Commissioner's brief characterizes as "[t]he only case directly involving the issue here." In the *Bell* case the taxpayer was the remainderman of two trusts in which his father and mother were life beneficiaries. He purchased their life interests, whereupon the corpus of both trusts which consisted of cor-

porate stock was delivered to him. The court held that the taxpayer was entitled to recover his cost through amortization over the periods of the life expectancies of his mother and father.

The parallel between *Bell* v. *Harrison, supra*, and the case before us is striking. Most of the cases relied on by the Commissioner here are distinguished by the Court of Appeals in the course of its opinion there and we see no need for further elaboration. We think the result reached in *Bell* is correct and follow it.

We note that *Bell* v. *Harrison, supra*, has been cited with approval in *Peter P. Risko*, 26 T. C. 485. There the taxpayer had purchased the partnership interest of his partner under an agreement which had 20 months to run. We held that the payment made by the taxpayer was a capital expenditure amortizable over the remaining life of the partnership agreement. While the facts of *Risko* are not on all fours with those before us, we think the Court's reasoning is applicable here. The Court said:

> If what petitioner obtained by the payment to Mrs. Backus was her interest in the partnership property, see *Nathan Blum, supra* [5 T. C. 702], the situation seems to us comparable to the purchase by a landlord of the remaining term of an outstanding lease. See *Henry B. Miller*, 10 B. T. A. 383. *Here petitioner would obtain all the partnership assets by the terms of the agreement when its term expired just as the landlord would obtain a full interest in his property at the termination of the lease. In such circumstances where the landlord proceeds to use the property so acquired, he is permitted to amortize the expenditure over the remaining term of the acquired lease. Clara Hellman Heller Trust No. 7610*, 7 T. C. 556, reversed on other grounds sub nom. *Wells Fargo B. & U. Trust Co.* v. *Commissioner*, (C. A. 9) 163 F. 2d 521. And if what petitioner obtained was Mrs. Backus's interest in the partnership profits during the balance of the term of the agreement, this was merely a wasting asset to be recovered out of the income produced, *Eleanor S. Howell*, 24 T. C. 342, *as in the case of the purchase of a life estate by the owner of the remainder. Bell* v. *Harrison*, (C. A. 7) 212 F. 2d 253. Under either analogy or on a combination of the two, we conclude that the expenditure was recoverable over the life of the interest acquired and that depreciation as claimed should be allowed.
>
> This is not like an ordinary case where the purchaser of an interest in a partnership seeks to amortize the payment. In such a case, since the partnership would exist for an indeterminate period, possibly no anticipated life for the payment could be fixed. Cf. *Ethel Sperling, supra. Petitioner here was not buying an interest in a partnership of indeterminate duration, nor was he buying the assets themselves. These would become his in any event at the termination of the agreement. All that he was buying was the interest that Mrs. Backus owned. All that she owned would completely terminate at the conclusion of the 20 months.* * * * [Emphasis supplied.]

Here too, petitioners were not buying the stock. All they bought were the life interests of the income beneficiaries in the trust. These interests were terminable, and the stock would become petitioners' in any event on termination of the trust.

*Decisions will be entered under Rule 50.*