**Allen M. EARLY and Jeannette B. Early, Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**No. 29240.**

United States Court of Appeals, Fifth Circuit.

May 21, 1971.

Rehearing Denied June 16, 1971.

Certiorari Denied Oct. 12, 1971.
See 92 S.Ct. 100.

Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Leonard J. Henzke, Attys., Tax Div., U. S. Dept. of Justice, K. Martin Worthy, Chief Counsel, Chris J. Ray, Atty., Internal Revenue Service, Elmer J. Kelsey, Robert I. Waxman, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellant.

Leland E. Fiske, Dallas, Tex., for petitioners-appellees.

Before COLEMAN, AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The Commissioner appeals from a decision of the Tax Court which, over the

dissents of six of its 15 members, overruled his determination of deficiencies in taxpayers' federal income tax for the years 1964–65, and in addition sustained taxpayers' claims for refunds for the same years. 52 T.C. 560 (1969). At issue is whether, and to what extent, taxpayers are entitled to periodic deductions for amortization of the value of a joint life estate which they acquired from the estate of a decedent.

The basic facts are not in dispute. Taxpayers Allen and Jeannette Early [1] are husband and wife, reside in Dallas, Texas, and filed joint returns for the tax years in question. Both were friends of Sam and Rose Van Wert. For several years prior to 1954, taxpayer acted as Sam Van Wert's accountant. Following Van Wert's death in that year, taxpayer performed the same services for Mrs. Van Wert until her death. At her husband's death Mrs. Van Wert was left with real and intangible personal property of substantial value, including 70,000 shares of stock in El Paso Natural Gas Company. By and large, the certificates and instruments evidencing her ownership of these assets, together with her books and records, were in taxpayer's possession.

In November, 1957 Mrs. Van Wert executed stock powers, covering certificates representing the 70,000 shares of El Paso stock in taxpayer's possession, in favor of taxpayer (50,000 shares) and Mrs. Early (20,000 shares). Mrs. Van Wert's 1957 federal gift tax return, prepared and filed by taxpayer, did not reflect these transactions.

Mrs. Van Wert died August 12, 1958. She left a will and codicil in which she appointed taxpayer and another as co-executors, made various specific and monetary bequests, expressly pretermitted all relatives in "blood or law," and directed that the residue of her estate be placed in trust with the income to be paid to her physician and his wife for their joint lives, the remainder to speci-fied charitable donees. The will and codicil did not specifically mention the 70,000 shares of El Paso stock. Taxpayers claimed ownership of the shares, asserting that in executing the stock powers Mrs. Van Wert had intended to make them a gift [2] of the stock.

Mrs. Van Wert's will and codicil were contested by 44 intestate heirs on the grounds of undue influence and lack of testamentary capacity, and several parties to the controversy objected to taxpayers' retention of the El Paso stock. A settlement was reached in November, 1959 which in part provided that in return for the surrender of the El Paso stock to the estate, and destruction of the stock powers, taxpayers would be accorded a joint life interest in 32 per cent of the income from the trust reduced by $4000 during each of the first four years. Taxpayers incurred legal fees of $20,000 in connection with this settlement.

The El Paso stock transferred to the estate had a fair market value at the date of transfer of $2,288,125, and it was included in the estate for federal estate tax purposes as a transfer by gift with the retention of a life interest. The value of the El Paso stock comprised about 53 per cent of the corpus delivered to the testamentary trust. The commuted value of taxpayers' joint life estate in the trust income was $716,919.91, based upon an expected joint life of 31.16 years, calculated through the use of the Commissioner's tables.

On January 12, 1960, taxpayer, acting as co-executor of the estate, filed an amendment to Mrs. Van Wert's 1957 federal gift tax return, reporting the market value of the El Paso stock at the date of the 1957 transfer for gift tax purposes and paying a gift tax in the amount of $341,898.78. In October, 1961 the estate filed a claim for refund of the gift tax paid pursuant to the amendment of this return. The taxpayer, acting as co-executor of the estate, and the estate

---

1. Taxpayer, used in the singular, will be used to denote Allen Early.

2. A bank guaranteed Mrs. Van Wert's signature on the stock powers to be genuine.

tax examiner, negotiated a compromise of this claim under which it was agreed that for tax purposes Mrs. Van Wert would be treated as having made a completed gift to taxpayers in 1957, which would be measured by the actuarial value of the life estate they ultimately received. The gift tax payable was thus reduced to $161,181.29, and the estate received a gift tax refund of $180,717.49. The estate tax return for the Van Wert estate discloses that a credit was allowed against federal estate taxes for the gift taxes actually paid for 1957.

During the years 1961–65 taxpayers reported as income the payments they received from the Van Wert testamentary trust. They also took periodic deductions for amortization of the cost basis of the life estate. These annual deductions for amortization were calculated by combining the commuted value of the life estate at the time taxpayers acquired it with the $20,000 legal fee incurred in connection with the settlement, Pennroad Corp., 21 T.C. 1087 (1954); Jones Estate v. C.I.R., 127 F.2d 231 (5th Cir. 1942), and dividing this by the expected duration of taxpayers' joint life, 31.16 years. However, since the Van Wert trust received part of its income in the form of interest on tax-exempt obligations, taxpayers allocated part of the annual amortization to taxable income and part to income from tax-exempt sources, and did not claim deductions for that part of the amortization allocated to tax-exempt income.

The Commissioner disallowed the deductions for amortization on the ground that taxpayers' life interest was "acquired by gift, bequest, or inheritance" and that the deductions were therefore prohibited by § 273 of the Code.[3] Taxpayers filed a petition for redetermina-

tion in the Tax Court, asserting that § 273 was inapplicable. They also contended that notwithstanding the tax-exempt source of some of the income the amortization was fully deductible, and accordingly claimed refunds for the years in which they had not taken deductions for amortization allocated to tax-exempt income. The Tax Court held for taxpayers on both issues, and the Commissioner has appealed. Because we have concluded that § 273 precludes *in toto* the deductions for amortization, we reverse the decision below without reaching the second issue.

Central to a resolution of the disputed applicability of § 273 is whether the rationale of Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938), compels the conclusion that for income tax purposes taxpayers acquired their life interest by "gift, bequest, or inheritance." *Lyeth* held that an heir who contested his grandmother's will, and who, as a result of a compromise of that contest, received property from the grandmother's estate which he would not have received had the will gone uncontested, acquired that property "by bequest, devise, or inheritance," and was therefore not liable for federal income taxes. *See* I.R.C. § 102. The Court observed that

> Petitioner was concededly an heir of his grandmother under the Massachusetts statute. It was by virtue of that heirship that he opposed probate of her alleged will which constituted an obstacle to the enforcement of his right. * * *

> There is no question that petitioner obtained that portion, upon the value of which he is sought to be taxed, because of his standing as an heir and of his claim in that capacity. * *

3. I.R.C. § 273, 26 U.S.C. § 273 provides:
"Holder of a Life or Terminable Interest.
"Amounts paid under the laws of a State, a Territory, the District of Columbia, a possession of the United States, or a foreign country as income to the holder of a life or terminable interest acquired by gift, bequest, or in-

heritance shall not be reduced or diminished by any deduction for shrinkage (by whatever name called) in the value of such interest due to the lapse of time."
The section is without helpful legislative history. *See* Gist v. United States, 423 F.2d 1118, 1120 (9th Cir. 1970).

Whether he would receive any property [as an heir] depended upon the validity of his ancestor's will and the extent to which it would dispose of his ancestor's estate. When, by compromise and the decree enforcing it, that disposition was limited, what he got from the estate came to him because he was heir \* \* \*. 305 U.S. at 195–197, 59 S.Ct. at 159, 160, 83 L.Ed. at 125–126.

The Commissioner contends that taxpayers here acquired their life interest under circumstances analogous to those in *Lyeth,* that since the nature of their claim to the stock was as donees their life interest should also be treated as having been acquired by gift, and that § 273 therefore prohibits amortization.

However, the Tax Court held, and taxpayers contend, that *Lyeth* is inapplicable because taxpayers "sold or exchanged" the stock, to which they had bona fide claims of title through an alleged prior gift, for their life interest. To characterize the transaction with a different label, it is their contention that they "purchased" their joint life interest, and that § 273 does not apply to "purchased" life estates. *See* Gist v. United States, 296 F.Supp. 526 (S.D. Cal.1968), aff'd, 423 F.2d 1118 (9th Cir. 1970); Bell v. Harrison, 212 F.2d 253 (7th Cir. 1954).

A taxpayer may legitimately amortize the cost basis of a purchased life interest. But we think that for income tax purposes these taxpayers must be treated as having acquired their life estates by gift and not by sale or exchange, or purchase. It is undisputed that whatever claim they may have had to the El Paso stock was acquired by a purported gift. It was this claim to ownership through an assertedly donative transaction which, among other things, was put in issue by the controversy over the Van Wert estate. The thrust of taxpayers' position in this controversy was that they were donees. We cannot conclude otherwise than that, when the dispute was compromised, whatever taxpayers took they took for income tax purposes as donees.

Taxpayers stress that, while Lyeth asserted his claim against his grandmother's estate, their claim was not against the Van Wert estate but to ownership of the stock through a prior purported gift. It was this conceptualization which underlay the Tax Court's holding that taxpayers "sold or exchanged" the stock for the life estate, and its conclusion that *Lyeth* was therefore inapplicable.

There are circumstances under which the donee of another may through an exchange of rights or property with the donor also acquire a life interest which may be said to be purchased, and which is therefore amortizable notwithstanding § 273. *See* Gist v. United States, *supra*; see also, Bell v. Harrison, *supra*; William N. Fry, Jr., 31 T.C. 522 (1958), aff'd, 283 F.2d 869 (6th Cir. 1960).[4] And we think that this may be so where that which the donee exchanges consists of rights or property previously acquired from the donor.[5] *Cf.* Sherman Ewing, 40 B.T.A. 912 (1939); C.I.R. v. Matheson, 82 F.2d 380 (5th Cir. 1936). It is also true that unlike Lyeth, who had an inchoate claim as an heir against his grandmother's estate, taxpayers here had claims of full ownership to stock which was in their possession, and that, therefore, the settlement involved some exchange of property rights, and in some degree resembled a "sale or exchange" of stock for life estate.

But all compromises, and therefore all transactions within the potential ambit of Lyeth v. Hoey, are in some measure exchanges. We believe it is not sufficient to render *Lyeth* inapplicable that taxpayers' status as purported donees took the form of claims to ownership of the stock, which resulted in the settlement resembling a sale of the stock

---

4. The I.R.S. limited its acquiescence in decisions such as *Bell* and *Fry* to transactions that are bona fide and not for tax avoidance purposes. Rev.Rul. 62–132, 1962–2 Cum.Bull. 73.

5. *See* n. 6, *infra.*

and purchase of the life estate. Whether one relinquishes the right to litigate a suit contesting a will to judgment, as in *Lyeth,* or the claimed right to the possession, use and benefit of stock, as here, we have concluded that so long as the settlement is in substantial measure to resolve an underlying and disputed claim based upon a purported gift, bequest, inheritance or the like, what is received in settlement must be characterized, for tax purposes, by the nature of the underlying and disputed claim resolved.[6] Thus, in circumstances such as those presented by this record, where the rationale of *Lyeth* is implicated but where, in addition, the transaction resembles a sale or exchange of property, we think that *Lyeth* governs unless it may be said that the circumstances surrounding the transaction fairly exclude the possibility that the exchange is in reality a compromise of an underlying and controverted claim such as one of gift, bequest or inheritance.

Indeed, in the decisions relied upon by the Tax Court majority, and by taxpayers here, there existed no dispute which the exchange may be said to have compromised. Each taxpayer's right to that which he gave up in the exchange was unquestioned. In Gist v. United States, *supra,* a widow in a community property jurisdiction was put to an election by her husband's will. If she took against the will she retained fee simple title to her share in the community and received nothing from her husband. If she elected to take under the will she received a life interest in the income from her husband's share of the community but acceded to her husband's disposition of the remainder interest in her share. In short, she exchanged the remainder interest in her share of the community for a life interest in her husband's share. It was held that the widow acquired the life interest in the income from her husband's share by purchase and that § 273 did not prohibit amortization of the commuted value of that interest.[7] However *Gist,* by reference to such decisions as C.I.R. v. Siegel, 250 F.2d 339, 345–347 (9th Cir. 1957), relied upon the undisputed and vested character of the wife's community interest, which was exchanged for the life interest. 296 F. Supp. at 528. Similarly, Sherman Ewing, *supra,* and C.I.R. v. Matheson, *supra,* which hold that the discharge of a monetary legacy by the transfer of securities constitutes a sale or exchange of the securities, involve legatees whose right to take was not in dispute.

■ Taxpayers here had no such clearcut right. The Tax Court held that they had a bona fide claim of title to the stock, but refrained from holding that they were undisputed owners by virtue of the purported gift. Their claim of ownership was very much in dispute, and by the settlement reached taxpayers relinquished any and all claims of fee simple title to the stock. Under the circumstances we conclude that the exchange of stock for life estate was realistically a compromise of taxpayer's dis-

6. We are not prepared to accept the somewhat broader proposition suggested in the Commissioner's brief, that the nature of the transaction by which taxpayers acquired their interest in the stock governs the tax treatment of the life interest. It is the nature of the underlying and disputed claim resolved by the settlement which is crucial, and the nature of the transaction by which taxpayers asserted ownership of the stock is only relevant here because it was the validity of that precise transaction which was in dispute and was resolved by the compromise.

That this broader proposition may have been advanced inadvertently by the Com-

missioner is indicated by his apparent acceptance of *Ewing, supra,* and *Matheson, supra,* as correct, but distinguishable from the case under consideration because the taxpayers in each of those decisions had a clear and pre-existing right to that which they exchanged.

7. She was not permitted to amortize that portion of the life interest in the community property which was attributable to her share of the community, for she was entitled to that in any event and in no sense acquired it by either "purchase" or "compromise." 296 F.Supp. at 529.

puted right to the stock,[8] and since they claimed the stock as donees they must be treated for federal income tax purposes as having acquired the life estate in that capacity. We need not, and do not, hold that *Lyeth* governs transactions such as this unless the right to that which is exchanged is beyond cavil—the dispute over the purported gift to these taxpayers was more than merely colorable. We hold only that where there exists a substantial controversy in which a taxpayer claims as a donee, what is received in settlement is received for tax purposes as a donee.

Taxpayers urge that White v. Thomas, 116 F.2d 147 (5th Cir. 1940), cert. denied, 313 U.S. 581, 61 S.Ct. 1098, 85 L.Ed. 1538 (1941), is to the contrary. The taxpayer there claimed ownership of a decedent's ranch through a prior inter vivos gift. In compromise of this claim the estate paid the taxpayer a sum of money. Taxpayer contended that the money received was not includable in gross income for federal tax purposes since it was received in compromise of a claim which he asserted as a donee, and under *Lyeth* should be treated as having been acquired by gift. We held that "[w]hen what is received by a compromise is a part of the very thing claimed, the assertion is correct," but that since taxpayer had not received a part of that claimed, *i. e.*, the ranch, *Lyeth* was inapplicable.

We think that White v. Thomas is inapplicable.[9] When taxpayers surrendered the El Paso stock to the Van Wert estate the estate in turn transferred it to the testamentary trust from which taxpayers were to receive their income interest. As we have pointed out, the value of the stock comprised some 53 percent of the trust corpus. When taxpayers received income from the trust they were in part receiving income from the stock they had relinquished. We think they received a "part of the very thing claimed." The fact that the trustees subsequently sold the stock and reinvested the proceeds in other securities is without relevance. Furthermore, decisions such as Harte v. United States, 252 F.2d 259 (2d Cir. 1958); James F. Edwards, 37 T.C. 1107 (1962); and Darthey Williams, 36 T.C. 195 (1961) relied upon by taxpayers, involve a construction of the statutory terms "property" and "income from property" under § 22(b)(3) of the 1939 Code[10] and do not affect our conclusion here, which is based upon a more general, nonstatutory determination, of whether taxpayers received a "part of the very thing claimed."

The final string to taxpayers' bow is the assertion that, since a federal gift tax was imposed on the value of their joint life interest for the year 1957, our disposition is prejudicial to them. In taxpayers' words "the Commissioner, having collected a gift tax on the 1957 gift, a refund of which is now barred by limitations, is estopped from denying that the gift took place in 1957." However construed, this contention is without merit. First, it is bottomed on the assumption that a ruling against taxpayers necessarily would be based on the conclusion that they received a gift at the time of the settlement in 1959 and received no gift in 1957. But we accept as a premise that a purported gift was made in 1957, and hold only that, because the validity of the gift was in dispute,

---

8. In reaching this conclusion we do not rely on the absence of any reported gain or loss on the transaction, in view of the Commissioner's concession below that the rights exchanged should be deemed to be of equal value. However, we are not required to accept taxpayer's contention that the exchange was in fact taxable. As far as we are able to ascertain from the record, the Commissioner conceded only that the rights exchanged should be deemed equal in value, so that *if* the exchange was taxable, no gain was *realized*. *See* 52 T.C. at 565. We consider that the question whether the exchange was taxable is not a consideration in this case.

9. Thus, we need not consider whether the decision has present viability.

10. § 102 of the 1954 Code.

the life estate received in the settlement should be treated as though it were acquired by gift. *See* Harte v. United States, *supra* at 261. Moreover, insofar as our holding that for federal income tax purposes the purported 1957 gift was not beyond dispute may carry any implication that the gift was not "complete," this is not necessarily inconsistent with the Commissioner's determination that a gift tax was due for the year 1957. It has long been recognized that the gift tax provisions of the Code are not in pari materia with the income tax provisions, with the result that a transfer sufficiently complete to be subject to a gift tax is not necessarily complete for income tax purposes.[11] Finally, if taxpayers mean to imply that as a result of our holding the estate might be on some theory entitled to a gift tax refund, now barred by the statute of limitations, we note that the gift tax paid for the year 1957 was credited against and reduced the amount of federal tax payable on the Van Wert estate,[12] *see* 26 U.S.C. § 2012, so that any gift tax refund to which the estate conceivably might have been entitled would have been offset by an identical increase in the estate tax payable. We conclude that the payment of a federal gift tax for the year 1957 does not prejudice taxpayers, and in no way affects our ruling with respect to their income tax liability for the years 1962–64.[13]

Since, under the rationale of Lyeth v. Hoey, taxpayers must be treated for income tax purposes as having acquired their joint life estate by gift, § 273 of the Code prohibits any deductions for amortization of the cost basis of the life estate. The decision of the Tax Court is therefore

Reversed.

---

11. *See* Lockard v. C.I.R., 166 F.2d 409, 411 (1st Cir. 1948).

"At the bottom of [taxpayers'] contentions is this implied assumption: The same transaction cannot be a completed gift for one purpose and an incomplete gift for another. Of course, that is not true, as the cases above cited make clear. Perhaps to assuage the feelings and aid the understanding of affected taxpayers, Congress might use different symbols to describe the taxable conduct in the several statutes, calling it a 'gift' in the gift tax law, a 'gaft' in the income tax law, and a 'geft' in the estate tax law." C.I.R. v. Beck's Estate, 129 F.2d 243, 246 (2d Cir. 1942).

12. The original estate tax return for the Rose Van Wert estate, together with the federal estate tax examiner's corrections thereto, which a covering letter discloses that taxpayer assented to, are among the original exhibits in this case.

13. Of course, nothing we have said in any way intimates a view on the validity of the imposition of the 1957 gift tax.