Marianne Crocker **ELRICK**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 72–1366.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1973.

Decided Sept. 10, 1973.

---

10. See Fed.R.Crim.P. 11.

Keith A. Jones, Atty., Dept. of Justice, of the bar of the Supreme Judicial Court of Massachusetts, pro hac vice by special leave of Court, for appellant. Scott P. Crampton, Asst. Atty. Gen., and Leonard J. Henzke, Jr., Atty., Dept. of Justice, were on the brief for appellant. William A. Friedlander, Atty., Tax Div., Dept. of Justice, also entered an appearance for appellant.

Sidney D. Rosoff, Washington, D. C., of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, for appellee.

Before BAZELON, Chief Judge, TUTTLE,* Senior Circuit Judge for the Fifth Circuit, and MacKINNON, Circuit Judge.

MacKINNON, Circuit Judge:

This appeal involves certain claimed deficiencies in federal income taxes for the taxable years 1965 and 1966 in the amounts of $17,267.63 and $11,829.28 respectively. The decision of the United States Tax Court in favor of taxpayer-appellee[1] is under attack here on appeal by the Commissioner.

The facts of the case are undisputed.[2] On October 25, 1937, when taxpayer was four years old, her parents entered into a separation agreement which survived their divorce several months thereafter. Under the terms of the agreement, taxpayer's father, on November 1, 1937, created for her benefit an inter vivos trust consisting of 5,000 shares of capital stock of Provident Securities Company, a closely held California corporation. The terms of the trust provided that, during the joint lives of taxpayer and her father, all of the net income of the trust was to be paid over to the father until taxpayer reached her twenty-first birthday. At that time, taxpayer was to receive annually the first $10,000 of annual net income if unmarried and so long as she remained unmarried. However, if married at the time of her twenty-first birthday, of if married subsequent to that time, she was to receive annually $6,000 of the trust's annual net income. In each instance, the balance of the net income was to be paid to the settlor, taxpayer's father. The trust indenture also provided that, upon the death of taxpayer's father, taxpayer would receive annually the entire net income of

---

* Sitting by designation pursuant to 28 U.S. C. § 294(d) (1970).

1. Marianne Crocker Elrick, 56 T.C. 903 (1971).

2. Most of the facts were stipulated by the parties in the Tax Court. *Id.* at 903; *see* Stipulation of Facts, J.A. at 17.

the trust. In addition, upon the death of her father she would receive one-third of the trust corpus upon reaching the age of twenty-one, and one-half of the remaining corpus upon attaining the age of thirty-five. The corpus remaining at taxpayer's death was to be divided equally among her surviving issue, if any. Finally, taxpayer's father retained the right to revoke the trust agreement with the consent of the taxpayer's mother.

In 1955, taxpayer, who was then married and twenty-one years of age, was entitled to trust income of $6,000 a year. However, with the consent of taxpayer's mother (who had consulted with the taxpayer), her father, on February 15, 1955, revoked the trust agreement of November 1, 1937. In place of the first trust, and as consideration for taxpayer's mother's consent to the revocation, taxpayer's father created a second trust for taxpayer's benefit, with a corpus consisting of 2,200 shares of capital stock of Provident. Under the terms of the new trust indenture, taxpayer was to receive the entire annual net income from the trust during her lifetime and was to have a testamentary power of appointment over the corpus which could not be exercised in favor of the taxpayer, her estate, her creditors, or the creditors of her estate. Taxpayer's annual income increased substantially as a result of the revocation of the first trust and the creation of the second trust. Where her income from the first trust would have been limited to $6,000, her taxable income from the second trust averaged approximately $31,000 for the years 1955 through 1961.

On March 13, 1961, taxpayer's father died testate, his will expressly providing that taxpayer should not share in his estate. Taxpayer immediately retained counsel to contest the will on various grounds. In addition, taxpayer filed suit for quasi-specific performance of a contract to make a will, or in the alternative, for a rescission of both the revocation and trust agreements of February 15, 1955. In this claim, taxpayer alleged that in return for her mother's consent to the revocation of the 1937 trust agreement, her father had promised to provide equally for taxpayer and the other two children in his will, after taking into account what taxpayer received under the trust agreement of 1955.

Taxpayer's legal actions were settled by agreement of the parties on May 13, 1963. Taxpayer agreed to dismiss her suits and the other parties agreed to pay her $250,000 in settlement of her claim for specific performance of a contract to make a will. The agreement provided that payment should be made by transferring 909 shares of the capital stock of Provident (valued at $275 a share) to the 1955 trust, the stock to be held, administered, and distributed in accordance with the provisions of that trust. Taxpayer was also given the option to receive in cash, free of any trust, any amount not to exceed $275 for each share of Provident stock up to 227 shares which would not be placed in trust. Taxpayer opted to have all 909 shares of the Provident stock placed in the trust, thereby increasing its corpus to 3,109 shares. As a result, the annual income received by taxpayer from the trust increased by about 50 percent, and constituted her main source of income.

Pursuant to the contingent fee agreement between taxpayer and her attorneys, she paid legal fees of $52,500 in 1963 and 1964, $22,536.70 in 1965, and $20,000 in 1966 in asserting and settling her claim against her father's estate. Taxpayer deducted these expenditures in full as ordinary and necessary expenses for the production of income on her income tax returns for the respective years in which the fees were paid. After the Commissioner of Internal Revenue disallowed these deductions for 1965 and 1966, taxpayer filed a petition in the Tax Court in which she abandoned her original position and conceded that the legal fees were capital expenditures and not deductible as ordinary and necessary expenses. She argued rather that the legal fees were amortizable over the useful life of the income-producing

asset (*i. e.*, the life estate in the 909 shares of Provident stock) which the legal fees were expended in acquiring. The Commissioner argued that the fees were not deductible under any theory but must simply be added to taxpayer's basis in the life estate. The Tax Court agreed with the taxpayer's new position and this appeal ensued. We reverse.

■ To begin with, however, we agree completely with the Tax Court that taxpayer-appellee's original contention that the legal expenses in question were fully deductible under § 212 as ordinary and necessary expenses for the production of income is wholly without merit. Marianne Crocker Elrick, 56 T. C. 903, 908 (1971). Under recent Supreme Court decisions there can be no question that such legal expenses incurred in the acquisition of property having a useful life to the taxpayer substantially beyond the taxable years in issue are capital in nature and become part of taxpayer's basis in the asset. Woodward v. Commissioner, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970); United States v. Hilton Hotels Corp., 397 U.S. 580, 90 S.Ct. 1307, 25 L. Ed.2d 585 (1970).

■ Taxpayer's principal claim is that she is entitled to a depreciation deduction under § 167(a)(2)[3] for the am-

ortization of these legal fees over the useful life of the income producing asset, here the life estate in the 909 shares of Provident stock. An intangible asset may be the subject of such a deduction [4] and it is well established that the *purchaser* of a life estate in income producing property is entitled to amortize the cost basis of his acquisition [5] over the period of the life expectancy of the beneficiary (in this case the taxpayer herself) by ratable annual deductions. Gist v. United States, 296 F.Supp. 526 (D.C. 1969) aff'd 423 F.2d 1118 (9th Cir. 1970); Commissioner v. Fry, 283 F.2d 869 (6th Cir. 1960) aff'g 31 T.C. 522 (1958); Bell v. Harrison, 212 F.2d 253 (7th Cir. 1954); Estate of Daisy F. Christ, 54 T.C. 493 (1970); May T. Hrobon, 41 T.C. 476, 503 (1964); Elmer J. Keitel, 15 B.T.A. 903 (1929); *see also*, 4 J. Mertens, Law of Federal Income Taxation § 23.63a (1966 rev.). However where the life estate was not purchased in an exchange transaction for good and sufficient consideration, § 273 of the Internal Revenue Code denies the depreciation deduction. Section 273 provides that income generated bv a life interest that was acquired by gift, bequest or inheritance shall not ve reuuced by any deduction for depreciation (or amortization or any other name for the same concept).[6] Thus if the life estate

---

3. SEC. 167. DEPRECIATION
    (a) General Rule—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
    \*      \*      \*      \*      \*
    (2) of property held for the production of income.

4. Treas.Reg. § 1.167(a)—3 (1956).

5. To his cost would be added other acquisition expenses subject to capitalization such as legal fees to arrive at his depreciable basis.

6. Section 273 provides as follows:
    HOLDERS OF LIFE OR TERMINABLE INTEREST.
    Amounts paid under the laws of a State, a Territory, the District of Columbia, a possession of the United States, or a foreign country as income to the holder of a

life or terminable interest acquired by gift, bequest, or inheritance shall not be reduced or diminished by any deduction from shrinkage (by whatever name called) in the value of such interest due to the lapse of time.
    At the outset we may dispose of appellee's initial claim that this section does not apply to legal fees because there is no "shrinkage in *value*" of the life interest. However, appellee is misled by the rather imprecise drafting of this provision. The language "any deduction for shrinkage (by whatever name called) in the value of such interest due to the lapse of time" simply refers as a whole to any *depreciation* deduction. As the pertinent Regulation indicates, this phrase is an all-encompassing exclusion of *any* type of depreciation deduction that is sought to be applied to reduce the taxable income from such a life estate.
    Amounts paid as income to the holder of a life or terminable interest acquired by

in issue in this case was acquired by gift, inheritance or bequest, no depreciation deduction would be allowable and taxpayer's claim must fail.

Taxpayer's interest in the life estate which is here in question arose in settlement of certain claims against her father's estate. Taxpayer claimed, and the Tax Court agreed, that the transaction should be characterized not as a settlement of a will contest, but rather of an action for "quasi-specific performance of a contract to make a will." Marianne Crocker Elrick, 56 T.C. 903, 909 (1971). "Any interest she acquired as a result of the settlement of this claim flowed from

gift, bequest, or inheritance shall not be subject to any deduction for shrinkage [*whether called by depreciation or any other name*] in the value of such interest due to the lapse of time.

Treas.Reg. § 1.273–1 (1958). This indicates that a depreciation deduction by definition is allowed but for § 273 whenever there is some shrinkage in value of the asset due to the lapse of time. Here the life estate itself is necessarily of limited duration and at the lapse of the beneficiary's life, will obviously be of no further value to her or her estate. This is the very premise upon which any depreciation claim must be predicated. Were the asset in question not subject to some "shrinkage in value due to the lapse of time," taxpayer would not have a depreciable asset and hence even had she purchased it no deduction for depreciation or amortization would be allowable.

It is true that the legislative history of § 273 seems to indicate that Congress was at a minimum concerned with a problem distinct from that involved in this case. The particular problem mentioned in the legislative history was that of the holder of a life estate setting up his expected future payments as a corpus and then claiming a deduction for the exhaustion thereof due to the lapse of time. H.R.Rep.No.350, 67th Cong., 1st Sess. 12 (1921) ; S.Rep.No.275, 67th Cong., 1st Sess. 15 (1921) ; 1954 U.S. Code Cong. & Admin.News 4206, 4867. It has repeatedly been observed that the legislative history of this section is extremely sparse and unenlightening. Early v. Commissioner, 445 F.2d 166, 168 n. 3 (5th Cir.), cert. denied, 404 U.S. 855, 92 S.Ct. 100, 30 L.Ed.2d 96 (1971) ("The section is without helpful legislative history.") ; Gist v. United States, 423 F.2d 1118, 1120 (9th Cir. ·1970) aff'g 296 F.Supp. 526 (S.D.Cal.1969) ("The legislative history of § 273 and its antecedents is brief and unhelpful. No treasury regulations or revenue rulings provide definitive guidance. No case is precisely on point."). It thus appears that Congress in floor and committee discussion may have simply mentioned one of its concerns in this area, fully intending to reach the question presented in this case as well. It is not necessary to the validity of any particular

effect of a statutory provision that Congress refer to it in the committee reports or debates. The statute is to be applied in the first instance as written. And if Congress painted with too broad a brush in seeking to eradicate a particular problem, it is not for us to correct. We cannot ignore the clear language of the prohibition in § 273. It is also unquestioned that the section has been interpreted by the courts to reach the issue involved in this case and to preclude any depreciation deduction on a life estate acquired by gift, bequest or inheritance. *E. g.*, Early v. Commissioner, 445 F.2d 166 (5th Cir.), cert. denied, 404 U.S. 855, 92 S.Ct. 100, 30 L.Ed.2d 96 (1971) ; Gist v. United States, 423 F.2d 1118 (9th Cir. 1970) ; *see also* 6 J. Mertens, Law of Federal Income Taxation § 36.62 (1968 rev.).

While the legal fees clearly became part of taxpayer's basis in the life estate in this case, she does not (and certainly cannot) claim depreciation deductions with respect to her total basis in the asset, using some substituted basis (*i. e.*, a basis determined by reference to the basis of the property while in the hands of another), since this would, of course, be an admission that the interest was acquired by gift or inheritance. In spite of the fact that taxpayer claims that the life estate was acquired in a bona fide arm's length purchase, she is not claiming a depreciation deduction with respect to her "cost" in the asset, *i. e.*, the consideration supposedly transferred by her to the decedent. This is highly inconsistent. In essence she is attempting to claim a deduction for depreciation only with respect to a portion of her total basis. This she cannot do and it serves to underscore the distinction between this case (where the life estate was acquired by gift or inheritance) and the cases involving a bona fide purchase of a life estate. In the latter case the legal fees become part of taxpayer's cost basis and the entire basis is then the subject of depreciation over the useful life of the income producing asset. *Cf.* Early v. Commissioner, *supra* n. 6 (where taxpayer was at least consistent in claiming depreciation as to total cost basis plus legal fees).

her standing as a third-party beneficiary and not from her standing as an heir, devisee, donee, or legatee." *Id*.

In determining the correctness of this characterization, attention must be directed to the Supreme Court's decision in Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938) holding that recoveries in compromise or settlement are of the same nature for tax purposes as recoveries that would have been received had the claim been fought out to its ultimate conclusion. *Lyeth* involved an heir who attacked his grandmother's will and ultimately settled with the estate for certain property which could not have been received had the will gone uncontested. The Commissioner sought to tax these proceeds as income, but the Supreme Court held that they constituted an inheritance since they were received in taxpayer's capacity as heir:

> Petitioner was concededly an heir of his grandmother under the Massachusetts statute. It was by virtue of that heirship that he opposed probate of her alleged will which constituted an obstacle to the enforcement of his right. Save as heir he had no standing . . .

> There is no question that petitioner obtained that portion, upon the value of which he is sought to be taxed, because of his standing as an heir and of his claim in that capacity . . .

> Whether he would receive any property depended upon the validity of his ancestor's will and the extent to which it would dispose of his ancestor's estate. When, by compromise and the

decree enforcing it, that disposition was limited, what he got from the estate came to him because he was an heir . . .

Lyeth v. Hoey, *supra*, 305 U.S. at 195–197, 59 S.Ct. at 159, 160. While arguably the taxpayer in this case also obtained her life estate principally due to her status as heir, the Tax Court distinguished *Lyeth* in that here the taxpayer was claiming not as an heir, but as a third party beneficiary of a contract to make a will. Since we need not reach the question of whether this was in fact a will contest, *vel non*, we will accept the Tax Court's position for purposes of this opinion. However, we emphasize this caveat: that this court will not be bound by the parties' self-serving characterization of the settled claim.

That is, we are concerned that the Tax Court seemed to feel that merely by labeling her cause of action one for "quasi-specific performance of a contract to make a will," taxpayer managed to foreclose all inquiry into the true nature of her claim. This would be the ultimate perversion of the *Lyeth* rationale. *Lyeth* holds that it is the *realities* of the claim that control the characterization of the subsequent compromise or settlement, not the labels of the parties.[7] In this regard, some preliminary judicial approval of the formulation of the issues would constitute an important factor in determining the nature of plaintiff's claims—and the further along the trial has progressed, the greater the ease with which this determination can be made with assurance.[8] Otherwise the

---

7. Indeed *Lyeth* held that the recovery there was in reality an inheritance in the face of a *state statute* to the contrary. It does great violence to *Lyeth* to use it as mandating our deference to a superficial characterization when it in fact demanded that we pierce such veneers to discover the true nature of the claim.

8. In *Lyeth* itself the Court noted as a significant factor that, in accordance with local practice, the issues had been framed by the probate court for a jury trial. "It then became necessary for him [taxpayer] to satisfy the court that the issues were substantial. Issues are not to be framed unless it

appears . . . that there is 'a genuine question of fact supported by evidence of such a substantial nature as to afford ground for reasonable expectation of a result favorable to the party requesting the framing of issues.'" Lyeth v. Hoey, *supra*, 305 U.S. at 195, 59 S.Ct. at 159. There was then, this additional safeguard of the substance of taxpayer's claims in *Lyeth*, not present here. Other courts have placed similar emphasis on the fact that the compromise agreement is made part of the probate proceedings. *See* Bailey v. Ratterre, 144 F.Supp. 449, 453 (N.D.N.Y.1956) (surveying cases) aff'd 243 F.2d 454 (2d Cir. 1957).

courts would be at the mercy of collusive settlement agreements wherein the parties, in the accommodating spirit of compromise (and with the foresight derived from the services of knowledgeable tax attorneys) have agreed to choose which of the pending causes of action is most advantageous for tax purposes and proceed to characterize the agreement a settlement of that claim alone.

In this case, taxpayer's first action in California's Probate Court challenged her father's will on grounds "that at the time of its [the will's] execution her father was not of sound and disposing mind; that the will had not been executed and attested in the manner and form required by law; and that the will was the direct result of the undue influence of others." Marianne Crocker Elrick, 56 T.C. 903, 905 (1971). After issue was joined in this action, taxpayer and her mother filed a second action for quasi-specific performance of a contract to make a will. Subsequently settlement was achieved and *both* actions were dismissed. The parties to the settlement agreement characterized the agreement as one of settlement solely of the specific performance action in equity. We repeat, such descriptions are not binding on the courts which will look to the substance of the claim compromised.

This is not to say that the courts must hypothetically weigh the respective likelihood of success of each of the taxpayer's arguments,[9] but simply that conclusory labels whether for tax-avoidance purposes or not, cannot be dispositive on the issue of the true character of a taxpayer's claim which is ultimately terminated by compromise or settlement, at least for purposes of applying the *Lyeth* principle. In this case, taxpayer's various claims against her father's estate, out of which the compromise agreement was born, taken as a whole, could well be characterized for tax purposes not as making out a contract action, but rather as an ordinary will contest.

However, we are not compelled by the posture of this case to reach our decision by that route. Even assuming that the Tax Court was correct in that the settlement was solely of a claim against the estate based on a contract to make a will, and not on the alleged invalidity of the will itself, this does not mean that the life estate was not a gift or inheritance for tax purposes.[10] Contracts to make a will have repeatedly been held to constitute gifts or inheritances under the Code. The test is whether the recipient of the funds furnished adequate and full consideration for the payments received from the decedent. *E. g.,* Taft v. Commissioner, 304 U.S. 351, 58 S.Ct. 891, 82 L.Ed. 1393 (1938); In re Estate of Hartshorne, 402 F.2d 592 (2d Cir. 1968); Markwell's Estate v. Commissioner, 112 F.2d 253 (7th Cir. 1940).[11] In this case taxpayer-ap-

---

9. "It has been said that before the doctrine of the *Lyeth* case can apply, the claim asserted in the will contest must have had some color of merit and the compromise must have resulted from something more than a naked threat." 1 J. Mertens, Law of Federal Income Taxation § 718 (text accompanying n. 60.1) (1969 rev.); *see also* Bailey v. Ratterre, 144 F.Supp. 449 (N.D. N.Y.1956) aff'd 243 F.2d 454 (2d Cir. 1957).

Conceivably of course, there could be no reasonable ground for dispute whatever. The fact that a contract action is settled obviously does not mean there was a valid contract nor even a *colorable* claim. Parties may settle actions in which both sides are completely mistaken as to the validity of the claim or even where both *knew* there is no real substance to the cause of action in order to avoid the time and expense of litigation or for other reasons.

10. The Tax Court's statement that taxpayer's interest "flowed from her standing as third-party beneficiary and not from her standing as . . . donee . . ." Marianne Crocker Elrick, 56 T.C. 903, 909 (1971), is in error on its face in its assumption that the terms "donee" and "third-party beneficiary" are incompatible. As developed *infra,* we feel that taxpayer's legal status is best characterized as a *donee beneficiary* of a third party beneficiary contract.

11. This question generally arises under § 102 (where the taxpayer claims that amounts received were not income but rather a gift or inheritance and thus excludable from gross income) or § 2053 (where the

pellee urges that "the 1955 transaction was bona fide and at arm's length" (Appellee's br. at 11). We feel that the record does not begin to support this facile contention since there was a total absence of consideration moving from taxpayer to her father in return for his promise to make a will.

This contract to make a will was alleged to have arisen out of the 1955 agreement between taxpayer's mother and father pursuant to their revocation of the first trust. The father's promise was supported by the mother's agreement to consent to the revocation.[12] Taxpayer herself bargained away no possessory rights in the exchange for the promise to make a will. Her interest in the first trust was at all times subject to the revocation of the trust agreement by her parents. (Jt. Exh. C–3, ¶ 6). It is eminently apparent that this was a *donative transaction* intended to confer a gift or inheritance upon the taxpayer. The father's promise to make a will was elicited by the mother solely in order to benefit her daughter and taxpayer became thereby a *donee* beneficiary with enforceable rights against the estate.[13] From taxpayer's viewpoint a gift is a gift nonetheless for owing its creation to a third party beneficiary contract rather than simple delivery plus donative intent. Taxpayer's claim (Ap-

decedent's estate argues that the gross estate should be reduced by a deduction for "claims against the estate"—the tension arising over whether the amounts received were in settlement of a claim against the estate or simply an inheritance). Under both sections the test is the same and it must be the same for purposes of § 273 as well.

In the cases which do find a bona fide purchase, invariably the taxpayer in question is a party to the contract, furnishing full and fair consideration. *E. g.*, Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959); Cohen v. United States, 241 F.Supp. 740 (E.D.Mich.1965); Davies v. Commissioner, 23 T.C. 524 (1954); Rev.Rul. 67–375, 1967–2 Cum.Bull. 60. This element is absent here. Alternatively, even when the taxpayer is a contracting party, there may be found a lack of full value given in the "purchase" transaction and this is especially likely when the taxpayer is the natural and predictable beneficiary of the testator's will.

12. "With the consent of petitioner's mother, petitioner's father revoked the trust agreement of November 1, 1937, on February 15, 1955. . . . Concurrently with this revocation agreement and as consideration for the consent of petitioner's mother to it, petitioner's father created a trust . . . also dated February 15, 1955, for the benefit of the petitioner."
Marianne Crocker Elrick, 56 T.C. 903, 904 (1971) (Findings of Fact); Stipulations of Fact, #9:
"9. On February 15, 1955 Charles Crocker and Virginia B. Vroman entered into a written agreement revoking the trust created by Charles Crocker on November 1, 1937 for the benefit of Marianne Crocker Elrick, a married woman."
J.A. at 18.

13. "A donee beneficiary of a contract is a third party to whom the promised beneficial performance comes without cost to himself as a donation from the promisee." 4 Corbin on Contracts § 782 (1951); *see also* 2 Williston on Contracts § 357 (3d ed. 1959); Restatement of Contracts § 133 (1932):
§ 133. Definition of Donee Beneficiary, Creditor Beneficiary, Incidental Beneficiary
(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is . . .
(a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary.
*See also* Restatement (Second) of Contracts § 133(c) (Tent.Draft No. 4, 1968):
c. *Gift promise.* Where the promised performance is not paid for by the recipient, discharges no right that he has against anyone, and is apparently designed to benefit him, the promise is often referred to as a "gift promise." The beneficiary of such a promise is often referred to as a "donee beneficiary"; he is an intended beneficiary under Subsection (1)(b). The contract need not provide that performance is to be rendered directly to the beneficiary; a gift may be made to the beneficiary, for example, by payment of his debt. Nor is any contract or communication with the beneficiary essential.

pellee's br. at 11–12) that she was a creditor beneficiary of the contract demonstrates a profound misconception of the applicable legal principles. A creditor beneficiary is one who is owed a legal duty or liability by the promisee. The promisor, in return for good consideration, agrees to discharge the promisees's obligation to the creditor beneficiary.[14] Here the taxpayer's *mother* (the promisee) was under absolutely no obligation to contribute to the support of the taxpayer. The consideration furnished to the promisor-father (the mother's consent to revocation) could only have arisen out of a donative intent to benefit her daughter. This motivation, powerful though it may be, was referrable exclusively to their blood affinity and maternal affection.

Analyzed without resort to the distinction between donee and creditor beneficiaries, the result is precisely the same. No consideration was furnished by the *taxpayer* for her father's promise. Instructive in this regard is the case of Early v. Commissioner, 445 F.2d 166 (5th Cir.), cert. denied, 404 U.S. 855, 92 S.Ct. 100, 30 L.Ed.2d 96 (1971). In that case the decedent had made an inter vivos gift of valuable securities to the taxpayers which came under attack upon decedent's death by the decedent's natural heirs. Taxpayers were joined as parties in the attack on decedent's will and their ownership of the shares placed in dispute. A settlement was concluded which provided that taxpayers would surrender the stock to the decedent's estate in return for a life estate in the income from a trust made up of the disputed shares. Taxpayers sought to take annual deductions for amortization of the value of their cost basis in the life estate (consisting of the value of the shares transferred back to the estate plus $20,000 in attorney's fees), claiming that the settlement agreement in reality provided for a *purchase* of the life estate with the stock. The Fifth Circuit held that while it was recognized that there could be circumstances in which a donee of another could exchange property with the donor to purchase an amortizable life interest notwithstanding § 273,[15] and that this may even be possible where that which the donee exchanges consists of rights or property originally acquired of the donor,[16] nevertheless the relinquished stock in that case was not sufficiently reduced to possession to such extent that the transaction was purely one of exchange.[17] The

---

14. 4 Corbin on Contracts § 787 (1951); 2 Williston on Contracts § 361 (3d ed. 1959); Restatement of Contracts § 133 (1932):

(1) Where the performance of a promise in a contract will benefit a person other than the promisee, that person is . . .

(b) a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary . . . .

15. Citing: Gist v. United States, 296 F.Supp. 526 (S.D.Cal.1969) aff'd 423 F.2d 1118 (9th Cir. 1970); Bell v. Harrison, 212 F.2d 253 (7th Cir. 1954); William N. Fry, Jr., 31 T.C. 522 (1958) aff'd 283 F.2d 869 (6th Cir. 1960).

16. Citing: (cf.) Commissioner v. Matheson, 82 F.2d 380 (5th Cir. 1936); Sherman Ewing v. Commissioner, 40 B.T.A. 912 (1939).

17. Under the circumstances we conclude that the exchange of stock for life estate was

485 F.2d—67

realistically a compromise of taxpayer's disputed right to the stock and since they claimed the stock as donees they must be treated for federal income tax purposes as having acquired the life estate in that capacity. We need not, and do not, hold that *Lyeth* governs transactions such as this unless the right to that which is exchanged is beyond cavil—the dispute over the purported gift to these taxpayers was more than merely colorable. We hold only that where there exists a substantial controversy in which a taxpayer claims as a donee, what is received in settlement is received for tax purposes as a donee.

Early v. Commissioner, *supra*, 445 F.2d at 170–171.

The *Early* court distinguished the *Gist* case, *supra* note 15, as involving firmly fixed rights that were exchanged with the estate for the life interest—rights not present in *Early*, nor in this case. We agree with the *Early* court's analysis of *Gist*:

In Gist v. United States, *supra*, a widow in a community property jurisdiction was put to an election by her husband's will.

court felt that the settlement was basically of a dispute over the validity of a gift from the decedent and, under the *Lyeth* rationale, thus constituted a gift for tax purposes. Therefore the court disallowed the claimed deductions, applying § 273.

In the case *sub judice*, taxpayer similarly claims that property originally acquired from the decedent was then subsequently exchanged in a "purchase" transaction for a new interest, also from the decedent which was the subject of her claim against the estate. Yet here there was not even the colorable consideration present in *Early* moving from taxpayer to her father.[18] Her interest in the trust was subject at all times to modification or revocation by her parents and their decision to supplant that first trust with a second trust plus a promise to make a will can in no way be characterized as a bona fide purchase by the taxpayer of that interest in her father's estate.

Even if she were a party to the contract to make a will, *i. e.*, even if she had absolute possession of the corpus and income of the trust or her consent were legally necessary to any revocation

thereof, and had herself bargained with her father for the contract to make a will, we would still have a difficult time finding on these facts that there was a legitimate arm's length purchase of the life estate for full and fair consideration. Where a taxpayer is a natural object of the decedent's testamentary disposition, the recipient of a recovery in settlement of a disputed contract to make a will in such an intrafamilial setting must overcome a heavy evidentiary burden to show a detached, bargained-for purchase of the claim against the estate in order to avail himself of a depreciation deduction in the face of § 273. It is difficult not to conclude that such an arrangement was not primarily intended to pass the life estate as a "gift, bequest or inheritance."

We conclude, then, that there was a complete absence of consideration contributed by taxpayer in acquiring this life estate. Her only possible status in enforcing this contract to make a will was as *donee* beneficiary of a third party beneficiary contract. Therefore, under *Lyeth*, amounts received in settlement of that claim are of the same character as the claim itself.[19] As such the

---

If she took against the will she retained fee simple title to her share in the community and received nothing from her husband. If she elected to take under the will she received a life interest in the income from her husband's share of the community but acceded to her husband's disposition of the remainder interest in her share. In short, she exchanged the remainder interest in her share of the community for a life interest in her husband's share. It was held that the widow acquired the life interest in the income from her husband's share by purchase and that § 273 did not prohibit amortization of the commuted value of that interest. However *Gist*, by reference to such decisions as C. I. R. v. Siegel, 250 F.2d 339, 345–347 (9th Cir. 1957), relied upon the undisputed and vested character of the wife's community interest, which was exchanged for the life interest. 296 F. Supp. at 528. Similarly, Sherman Ewing, *supra*, and C. I. R. v. Matheson, *supra*, which hold that the discharge of a monetary legacy by the transfer of securities

constitutes a sale or exchange of the securities, involve legatees whose right to take was not in dispute.
445 F.2d at 170. The court concluded that "taxpayers here had no such clearcut right," *id.*, and we find those words equally applicable to our case.

18. It is important to note also that unlike *Early*, taxpayer in this case was the natural object of a gift from her mother, if not a testamentary disposition from her father as well. In finding against the taxpayers in *Early*, the court observed that a factor in favor of taxpayers was the fact that they were not in the position of heirs, having no "inchoate claim" against the estate, but rather were asserting their rights to full ownership to stock which was in their possession. *Id.* at 169. That "inchoate claim" *is* present here.

19. As pointed out *supra*, taxpayer's actions also bore many of the incidents of a will contest, and since taxpayer's contentions must fail even under her version of the na-

life estate was in fact received as a gift for tax purposes and no income produced by it may be reduced by any deduction for depreciation in light of the strictures of § 273.

Reversed.

ture of the compromise, we are not to be understood as accepting for any purposes beyond those of mere debate the contract- claim characterization of this settlement agreement.