**Bedie L. KUHN, Plaintiff,**

**v.**

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 72–H–165.**

United States District Court,
S. D. Texas,
Houston Division.

April 21, 1975.

---

Allen E. Pye, Pye & Dobbs, Tyler, Tex., Robert L. Waters, Chamberlain, Hrdlicka, White & Waters, Houston, Tex., for plaintiff.

Edward B. McDonough, Jr., U. S. Atty., Houston, Tex., Lawrence R. Jones, Jr., Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## MEMORANDUM AND OPINION

CARL O. BUE, Jr., District Judge.

### I. INTRODUCTION

This is a suit for tax refund. All the facts have been stipulated by the parties, and the case has been submitted to the Court for resolution. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1346(a). The case presents one legal question: may a taxpayer-surviving spouse who with the decedent spouse transferred all community property to a trust in exchange for receipt of a life estate payable from the trust commencing after the decedent spouse's death amortize the cost basis of the life estate payments over the surviving spouse's life expectancy? This question is one of first impression in this Circuit [1] and has been precisely addressed by few other courts.[2]

This Court has consulted available judicial and scholarly authority as well as the legislative history of the relevant statutes, and has evaluated the memoranda and affidavits submitted by both parties. After thorough consideration, and for the reasons stated herein, this Court concludes that the taxpayer is entitled to amortize the cost basis of life estate payments that she received from the trust established in this case. Accordingly, she is entitled to the refund previously stipulated to by the parties.

### II. STATEMENT OF FACTS

The material facts of this case are contained in the stipulation. *See* Stipulation of Facts (March 30, 1973). Where necessary, this Court will refer to other relevant documents. For purposes of clarity, plaintiff will be referred to as the "taxpayer", and the defendant will be referred to as the "Government".

#### A. Disallowance of Claimed Deductions

This suit was filed for the refund of income taxes and interest for the calendar years 1965, 1966 and 1967. The taxpayer timely filed individual income

---

1. *Cf.* Early v. Commissioner, 445 F.2d 166 (5th Cir.), cert. denied, 404 U.S. 855, 92 S.Ct. 100, 30 L.Ed.2d 96 (1971); United States v. Gordon, 406 F.2d 332 (5th Cir. 1969); Vardell v. Commissioner, 307 F.2d 688 (5th Cir. 1962). *See also* Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938).

2. Gist v. United States, 296 F.Supp. 526 (S.D.Cal.1969), aff'd 423 F.2d 1118 (9th Cir. 1970); Estate of Daisy F. Christ, 54 T.C. 493 (1970), aff'd as to a separate question, 480 F.2d 171 (9th Cir. 1973). *See* Elrick v. Commissioner, 158 U.S.App.D.C. 270, 485 F.2d 1049 (1973); *cf.* Bell v. Harrison, 212 F.2d 253 (7th Cir. 1954); Commissioner v. Fry, 283 F.2d 869 (6 Cir. 1960); Codman v. Miles, 28 F.2d 823 (4th Cir. 1928); Chisolm v. United States, 19 F.Supp. 274 (Ct. Cl.1937); Estate of Kissel, 15 B.T.A. 705 (1929); Rev.Rul. 62–132, 1962–2 Cum.Bull. 73 (1962). *See also* 4 J. Mertens, Law of Federal Income Taxation § 23.63a (1966 rev.); 6 J. Mertens, Law of Federal Income Taxation § 36.62 (1968 rev.); Spruance v.

Commissioner, 60 T.C. 141 (1973); Sohosky v. Commissioner, 57 T.C. 403 (1971).

*See generally* Brawerman, Disposition of Community Property: Should One Spouse Receive a Life Estate in Other's Half?, 40 J. Taxation 116 (1974) ("Brawerman"); Morrison, The Widow's Election and Its Alternatives, 1971 Texas Tech Tax Institute 142–170 (1971) ("Morrison 1971"); Johanson, Revocable Trusts, Widow's Election Wills, and Community Property: The Tax Problems, 47 Texas L.Rev. 1247, 1296–98 (1969) ("Johanson"); 1967 U. Miami Inst. on Estate Planning, Schwartz & Liker, ¶ 67.1031, 10–21 and 10–22 (1967) ("Schwartz & Liker"); Smith, The Draftsman Vis-A-Vis The Widow's Election and Its Tax Consequences, 21 S.W.L.J. 591, 601–03 (1967) ("Smith"); Lipnick, Estate Planning and the Widow's Election, 28 Tex.B.J. 865 (1965) ("Lipnick"); Morrison, The Widow's Election: The Issue of Consideration, 44 Texas L.Rev. 223 (1965) ("Morrison 1965"); Note, Widow's Election—Amortizable Cost in the Purchase of a Life Estate, 25 S.W.L.J. 363 (1971).

tax returns for those years. On March 27, 1969, the taxpayer timely filed amended individual income tax returns for those years, requesting a refund of $973.46 for 1965, $954.13 for 1966 and $1,129.48 for 1967. Taxpayer premised her request for refunds on § 167 of the Internal Revenue Code, 26 U.S.C. § 167, which provides for a deduction from income tax for the expense of depreciation of a life estate.[3] On February 11, 1970, the Commissioner isued a statutory notice of claim disallowance for each requested refund, pursuant to § 273 of the Internal Revenue Code, 26 U.S.C. § 273.[4]

## B. Background of the Case

During the years in issue—1965, 1966 and 1967—taxpayer resided as a widow in Sugarland, Texas. She and her husband (decedent) were married in 1919. They had no children, although decedent had two children by a former marriage. All of the significant property holdings of the marriage were community property.

On February 25, 1959, taxpayer's husband died leaving a will which he had executed in 1958. Reference was made in this instrument to a trust created between taxpayer and her husband in 1942. This trust agreement established a trust consisting of all the property owned by the spouses. The trust was established on July 31, 1942, to provide for the needs of the surviving spouse in the event of the prior death of the decedent spouse. The obsolescence of some of the terms and provisions of the 1942 trust agreement necessitated its modification, which was accomplished by an agreement signed on August 31, 1946. Decedent and taxpayer were trustors of this agreement, and decedent was also designated as trustee. On November 3, 1958, decedent re-stated his intentions as to the trust property in the form of a declaration of last will and testament referred to above. This latter document specifically provided for the administration of a trust which consisted of all the assets and things of value belonging to decedent's estate as well as all community property, "Mrs. Kuhn (Taxpayer) having relinquished all community rights by contract". *See* 1958 Will at 1, ¶ 3.

On April 6, 1959, after decedent's death, his survivors, being the taxpayer and her two step-children, Harry M. Kuhn and Nell Katherine Kuhn Wilcox, along with Mrs. Wilcox' husband, E. David Wilcox, executed a document reciting the substance of the 1942 trust agreement as revised, the foundation for the consideration and establishment of the trust between taxpayer and her husband, and the apparatus for administering the trust. Harry M. Kuhn, decedent's son, was designated as trustee.

---

3. "§ 167. *Depreciation.*
"(a) *General Rule.*—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

. . . . .

"(2) of property held for the production of income.

. . . . .

"(h) *Life tenants and beneficiaries of trusts and estates.*—In the case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. In the case of property held in trust, the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each. In the case of an estate, the allowable deduction shall be apportioned between the estate and the heirs, legatees, and devisees on the basis of the income of the estate allocable to each."
26 U.S.C. §§ 167(a)(2), 167(h).

4. Section 273 provides:
"Amounts paid under the laws of a State, a Territory, the District of Columbia, a possession of the United States, or a foreign country as income to the holder of a life or terminable interest acquired by gift, bequest, or inheritance shall not be reduced or diminished by any deduction for shrinkage (by whatever name called) in the value of such interest due to the lapse of time."

In 1959, taxpayer transferred her interest in the community property belonging to herself and her husband to the trust and received a life estate in all of said property. *See* Gift Tax Return for Calendar Year 1959, Mrs. Bedie Lee Kuhn, Taxpayer at 2–4 (April 29, 1960). Gift tax liability arose as the result of this transfer, Commissioner v. Siegel, 250 F.2d 339 (9th Cir. 1957), and the taxpayer paid a gift tax on $113,496.12, representing the excess of the value of her community property interest transferred to the trust ($156,266.12) over the value of her actuarially computed right to the life estate (15 year life expectancy) in the entire trust ($42,770). Both sides agree that a finding in favor of taxpayer in this action will entitle the taxpayer to recover $3,041.79, plus statutory interest. A finding in favor of the Government will result in no recovery for taxpayer and a dismissal of her cause with prejudice.

## III. INTERPRETATION OF THE TAX CODE

### A. *Determining the Proper Statute*

On any journey through the labyrinth of the Tax Code, each judicial step must be carefully taken. The Court's awareness of the need for exercising caution in this area has been expressed previously.[5]

■ The Court must first determine which Code provision properly applies in this case. The taxpayer correctly points to § 167(h), 26 U.S.C. § 167(h), as the Code provision authorizing amortization deductions to reduce a life tenant's taxable income from the life estate. But the wording of § 273, 26 U.S.C. § 273, suggests to the Court that its application takes precedence in determining whether, in the first instance, the taxpayer as life tenant is entitled to an amortization deduction. As will be seen, it is the interpretation of § 273 around which this decision actually turns.

### B. *Legislative History of § 273*

■ The legislative history of § 273 is of only limited assistance. Early v. Commissioner, *supra*, 445 F.2d at 168 n. 3. When the statute was enacted in 1921,[6] Congress was concerned with a problem separate and distinct from that involved in this case. The particular problem discussed in the legislative history was that of the holder of a life estate setting up his expected future payments as a corpus and then claiming a

5. In Welder v. United States, 329 F.Supp. 739 (S.D.Tex.1971), aff'd per curiam, 461 F.2d 1269 (5th Cir. 1972), an unusually complex tax litigation prompted this Court to interpret certain tax laws. At that time, this Court saw fit to express its sense of bewilderment on initially confronting the tax environment by drawing upon the analysis of Judge Learned Hand. Judge Hand's words are no less appropriate in this case.

"In my own case the words of such an act as the Income Tax, for example, merely dance before my eyes in a meaningless procession: cross-reference to cross-reference, exception upon exception—couched in abstract terms that offer no handle to seize hold of—leave my mind only a confused sense of some vitally important, but successfully concealed, purport, which it is my duty to extract, but which is within my power, if at all, only after the most inordinate expenditure of time. I know that these monsters are the result of fabulous industry and ingenuity, plugging up this hole and casting out that net, against all possible evasion; yet at times I cannot help recalling a saying of William James about certain passages of Hegel: that they were no doubt written with a passion of rationality; but that one cannot help wondering whether to the reader they have any significance save that the words are strung together with syntactical correctness. Much of the law is now as difficult to fathom, and more and more of it is likely to be so; for there is little doubt that we are entering a period of increasingly detailed regulation, and it will be the duty of judges to thread the path—for path there is—through these fantastic labyrinths."

Hand, Eulogy of Thomas Walter Swan, 57 Yale L.J. 167, 169 (1947), *quoted in* Welder v. United States, 329 F.Supp. at 741–42 (S. D.Tex.1971).

6. Present statute 26 U.S.C. § 273 was codified as 26 U.S.C. § 215(b) under the 1924 Code, and as 26 U.S.C. § 24(d) under the 1939 Code.

deduction for the exhaustion thereof due to the lapse of time. H.R.Rep. No. 350, 67th Cong., 1st Sess. 12 (1921); S.Rep. No. 275, 67th Cong., 1st Sess. 15 (1921); 1954 U.S.Code Cong. & Admin. News, pp. 4206, 4867. The 1921 committee reports indicate that § 273 was enacted to prohibit the amortization of the gift value of a life estate. *Id.* But § 273 does not prevent the amortization of a beneficiary's own investment in such a life estate. Estate of Kissel, 15 B.T.A. 705 (1929).

### C. Supreme Court Interpretation of § 273

The United States Supreme Court has held that the Congress intended to incorporate into § 273 terms in common usage in other tax statutes. Lyeth v. Hoey, 305 U.S. 188, 194–95, 59 S.Ct. 155, 83 L.Ed. 119 (1938). As the Supreme Court saw it, § 273 was designed to prevent amortization of income by a taxpayer who had received the life estate income without cost and therefore without tax consequences—i. e., when received by virtue of a gift, bequest or inheritance.

In *Lyeth,* an heir contested his grandmother's will. As a result of the compromise of that contest, the heir received property which would not have been received if the will had gone uncontested. The Court would not permit the taxpayer to reduce by deduction income thus received which was not subject to tax liability. 305 U.S. at 195–97, 59 S. Ct. 155. Instead, the Court established as a standard the need of a taxpayer seeking to amortize to demonstrate the presence of adequate consideration. For example, merely labelling a will agreement as a "contract" and implying the presence of an "offer" and an "acceptance" would not establish the presence of consideration. Implicit in the Court's decision was the premise that a taxpayer wishing to amortize a life estate must demonstrate consideration based on ordinary concepts of the exchanging of rights to property.

### D. Fifth Circuit Interpretation of § 273

#### 1. The Case of Early v. Commissioner

■ *Lyeth* demands that courts closely scrutinize the amortization deduction claims of life estate recipients to verify the underlying foundation of their entitlement to the amortized property. The United States Court of Appeals for the Fifth Circuit has exhibited such scrutiny. In Early v. Commissioner, *supra,* 445 F.2d 166, taxpayers entered into an agreement whereby they compromised a will contest and surrendered stock securities in exchange for a joint life interest. The Court of Appeals held that the life interest had been acquired as the result of a compromise of a disputed right to stock and that the taxpayers were to be deemed as donees. Accordingly, the appellate court interpreted § 273 as precluding amortization of the cost basis of this life interest.

In *Early,* the Court of Appeals adopted the Supreme Court's reasoning in Lyeth v. Hoey and went on to note that *Lyeth* even governs circumstances in which a sale or exchange of property has occurred. As the appellate court saw it, amortization is permissible only when the surrounding circumstances of the transaction fairly demonstrate the taxpayer's possession of an underlying right to exchanged property. When this possibility is excluded, the exchange is, in reality, a compromise of an underlying and controverted claim—such as one of gift, bequest or inheritance, 445 F.2d at 170—and § 273 precludes amortization.

#### 2. Fifth Circuit Analysis of the Gist Case

To illustrate situations of permissible amortization and to distinguish those from the situation before it in *Early,* the Court of Appeals cited the case of Gist v. United States, 296 F.Supp. 526 (S.D.Cal.1968), aff'd, 423 F.2d 1118 (9th Cir. 1970). In *Gist,* the trial and appellate courts were confronted with

the identical factual setting and legal question presented in the instant case. Both courts concluded that a wife is eligible to be a purchaser of her husband's life estate for value as she would be if she purchased another's life estate for cash, and that she is therefore eligible to amortize the cost basis of such a life estate. 296 F.Supp. at 528.[7]

The district court enumerated a four-part analysis to support its finding that amortization deductions were permissible under § 273: (1) an election to take under the will not based on tax avoidance motives; (2) possession by the taxpayer, under community property law, of a present, existing and equal interest in the community property before the death of the decedent; (3) an election by the surviving spouse resulting in total relinquishment of that spouse's rights to the remainder interest in his or her one-half share of the community property; and (4)·relinquishment of the interest as a condition to receiving a life estate in the decedent's one-half interest in community property, resulting in the transfer of a life estate in the entire property to the survivor. 296 F.Supp. at 529. The United States Court of Appeals for the Ninth Circuit approved the rationale and analysis which yielded this four-part test and affirmed as well the district court's application of the test to conclude legally that a widow's acquisition of a life estate in the decedent spouse's community property interest

was a "purchase" for income tax purposes. 423 F.2d at 1120.

The United States Court of Appeals for the Fifth Circuit in *Early* examined the *Gist* transaction for purposes of § 273 analysis and found no dispute which the exchange was said to have compromised. 445 F.2d at 170. That is, the widow's right to property which she exchanged was found not to be in controversy. The *Early* court concluded by stating that "the undisputed and vested character of the wife's community interest, which was exchanged for the life interest", established the permissible amortization of a life estate so purchased. *Id.*

### E. Impact of Early v. Commissioner

■ Judge Godbold's language in *Early* foreshadows, if not requires, the permitting of amortization in this case. To this Court, the spirit, if not the command, of *Early* and *Lyeth* is to permit the amortization of a life estate by one who exchanges valuable property in consideration for receiving such a life estate where the right to possession of the property exchanged is undisputed. *See* Gist v. United States, *supra*; Estate of Daisy F. Christ, *supra; accord,* Elrick v. Commissioner, *supra*.[8]

### IV. THE BUTTERWORTH CASE

The Government contends that the holding of the United States Supreme

---

7. The instant taxpayer relies heavily on the *Gist* holdings and rationale. *See* Brief for the Taxpayer at 4–6 (June 25, 1973).

8. The Commissioner has acquiesced in the principle that a taxpayer who purchases a life estate may amortize his cost over the period of the beneficiary's life expectancy by ratable annual deductions. *See* Rev.Rul. 62–132, 1962–2 Cum.Bull. 73 (1962) *acquiescing in* Bell v. Harrison, 212 F.2d 253 (7th Cir. 1954) and Commissioner v. Fry, 283 F.2d 869 (6th Cir. 1960). In *Bell*, the taxpayer's parents created reciprocal trusts, each making the other a life beneficiary with remainder over to the taxpayer. Subsequently, the taxpayer purchased the respective life estates of his parents for value

based on the remaining lives of each parent. The Government contended that at the time of this purchase, a "merger" occurred so that the taxpayer was the owner of a fee simple—a merged life interest and remainder interest.

The taxpayer contended, and the appellate court agreed, that the taxpayer was entitled to recover the cost of his purchases through ratable amortization during the period of the parents' life expectancies because he had purchased life estates for value under 26 U. S.C. § 167(h) and § 273.

*Fry* is to the same effect. Indeed, the *Fry* court merely affirmed the opinion of the Tax Court per curiam in a one paragraph order.

Court in Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365 (1933), requires that the taxpayer be labelled a "beneficiary" in this case, thereby precluding her under § 273 from utilizing § 167(h) to amortize the cost of her life estate.[9]

In *Butterworth,* decedent bequeathed the bulk of the estate by will to the respondents as trustees, with directions to pay the net income to the widow. She accepted under the will and surrendered the common law rights granted her by the state laws. During certain years she received income from the trust paid by the trustees. The question which arose was whether a widow who accepts the provisions of her husband's will and receives part or all of the income from an established trust in lieu of her statutory rights becomes a beneficiary within the ambit of the statutes governing taxation of trusts. If the widow were not deemed to be a beneficiary, then nothing would be considered payable to beneficiaries, and the trustee would be subject to tax liability on all of the trust income without a deduction. However, if the widow were deemed to be a beneficiary, the trustee would be entitled to a credit against his income for any sum paid to the beneficiary, and the beneficiary would be subject to tax liability on trust income received.

The Supreme Court held that the widow became a beneficiary by accepting the provisions of her husband's will. When she made her election, the Court reasoned, the widow accepted the benefits of the will as well as the accompanying rights and liabilities. In no proper sense could she be viewed as having purchased an annuity; rather, she expressed a desire to occupy the position of beneficiary, and the Court treated her in that fashion for purposes of taxation. 290 U.S. at 68–69, 54 S.Ct. 221.

For two alternative reasons, this Court is not persuaded that *Butterworth* is controlling in the instant case. First, any generalization that all persons who are "beneficiaries" become recipients of income by "gift, bequest or inheritance" is inaccurate and distorts prior tax rulings. Second, the property interest received in *Butterworth* is distinguishable from that received in the instant case.

As to the first reason, allocation of trust income to the instant taxpayer may label her as a "beneficiary" for purposes of determining proper income tax liability for that trust income. But extrapolating this label through use of the *Butterworth* doctrine to characterize the recipient who participates in establishing and funding the trust with her own property as a recipient of income by "gift, bequest or inheritance" exceeds the permissible boundaries of the Supreme Court holding. The Court did not decide the issue of amortization in *Butterworth.* Beneficiaries of life estates in testamentary trusts have been held entitled to amortize their investment in the life estate properties. *See* Grant v. United States, 202 F.Supp. 608 (W.D. Va.1962); Caroline T. Kissel, 15 B.T.A. 705 (1929).[10]

This Court is persuaded that the *Butterworth* decision applies equally to community property and common law jurisdictions in ascertaining income tax liability for attributed trust income. Yet, despite a uniform application of the *Butterworth* principles, *Butterworth* is alternatively distinguishable from the

9. "When the wife makes an election, she accepts the benefits of the will with accompanying rights and liabilities; she does not purchase an annuity and cannot therefore properly be viewed as a purchaser of income for life. Rather, she occupies the position of beneficiary of a trust." Brief for the Government at 6 (August 15, 1973).

10. *Cf.* White v. Rose, 73 F.2d 236 (5th Cir. 1934). There, a widow was a co-tenant with her children in certain property. All joined in a conveyance to a trustee whereby the widow became entitled only to income rights in the entire property. The United States Court of Appeals for the Fifth Circuit held that she was a purchaser, not a creditor or incumbrancer, on the trust and a beneficiary of it for her lifetime.

instant case because the *Butterworth* widow's property interest differs from the instant taxpayer's property interest for purposes of § 273. The *Butterworth* widow elected to take a life interest in lieu of her statutory share in her husband's property, not a life interest as the result of a transfer of her own property. Estate of Daisy F. Christ, *supra,* 54 T.C. at 528; Gist v. United States, *supra,* 269 F.Supp. at 528; *see* Lyeth v. Hoey, *supra.*[11] The *Butterworth* widow's dower rights had no value prior to the husband's death, while the instant taxpayer's interest in community property belonged to her and had value prior to her husband's death. United States v. Stapf, 309 F.2d 592, 608 n. 20 (5th Cir. 1962) (Wisdom, J., dissenting), rev'd on other grounds, 375 U.S. 118 (1963); *see* Brooks, The Tax Consequences of Widows' Elections in Community Property States, 1951 U.So.Cal.Tax Inst. 83, 88.

## V.  IN–DEPTH ANALYSIS OF § 273

Being especially wary of adjudicating a tax question without first consulting all available authorities, the Court independently has sought out scholarly commentary on the legal question presented in this case. The commentators are sharply split on proper resolution of this question. *See* note 2, *supra; compare Morrison 1971 and Johanson with Schwartz & Liker, Smith, and Lipnick.*

### A.  The Case Against Permitting Amortization

Those opposing amortization of the cost basis of life estate payments received as the result of a widow's election focus their opposition primarily upon two factors: the resulting effect of the election on the family estate; and the ab-

sence of ordinary notions of a profit motive in the widow's election exchange. Professor Johanson critically points out that under an exchange such as the one effected in the instant case, the wife (as the surviving spouse) receives all of the income from the entire community estate for her lifetime, is taxed on only one-half of the value of the estate and obtains a reduction in the amount of her estate tax. He further contends that the election by the taxpayer to take under the decedent's will is not motivated by the type of economic considerations with which the income tax is concerned. Presumably, neither the taxpayer nor her husband has a profit motive. *See Johanson, supra,* 47 Texas L.Rev. at 1296–98.

Professor Morrison contends that when the taxpayer elects to take under the will, she does so as a beneficiary of the trust, and nothing is sold, for income tax purposes, when the election is made. Whether there was a "consideration" offset when the transfer was made merely presents a gift tax transfer question, not an income tax question. *See* Morrison 1971, *supra,* at 148–51 (1971).

In the taxation of trusts, according to Professor Morrison, the issue is *attribution* in determining who receives taxable income: the grantor, the trustee or the beneficiary. In essence, for the wife (taxpayer) to amortize her life estate, it would have to be said that she sold her property to the trustee as purchaser; otherwise, she becomes a beneficiary of the trust. If a sale has occurred and is so treated by the trustee, he should be taxed on all income from the property as property that he has acquired. However, if the trustee treats the receipt of property as a disbursement of income, the taxpayer (wife) is a beneficiary and

---

11. As will be seen, this Court concludes that the *Lyeth* rationale provides a more appropriate framework for determining whether to permit amortization than the *Butterworth* rationale. Indeed, the Court cannot reconcile the Government's efforts to utilize *Butterworth* to deny amortization deductions where the underlying right to property is undisputed, while falling back upon *Lyeth* to attack amortization deductions in cases where the Government argues that the life interest was not acquired as the result of the exercise of underlying rights. *See* Elrick v. Commissioner, 56 T.C. 903, 909 (1971), aff'd, 158 U.S.App.D.C. 270, 485 F. 2d 1049 (1973).

not a purchaser of a life estate who would be eligible for amortization.

In an exchange involving the husband and wife such as this one, according to Professor Morrison, the husband wants the wife to have the benefits of the trust and not to be treated as an independent purchaser. The gist of trust income allocation is "attribution"—i. e., identifying the source of the income-producing property. For income tax purposes, the taxpayer cannot be viewed as the vendor of property which is transferred to the trustee and which is then paid directly back to the taxpayer in annual installments. Otherwise, the taxpayer is in the position of allegedly having exchanged land while still receiving the income from that land, paying income tax on it and being able to amortize it as her own. *See Morrison 1971, supra; Morrison 1965, supra,* 44 Texas L.Rev. 223.

### B. The Case for Permitting Amortization

Those favoring amortization of the cost basis of life estate payments received as the result of a widow's election contend that one who utilizes the widow's election device sometimes does not realize all of the tax advantages hypothesized by those who oppose permitting amortization deductions. *Schwartz & Liker* contend that a decedent spouse's income may be snared in a hidden tax trap in the year of death by utilizing the widow's election mechanism. By receiving a remainder interest from the survivor's trust in exchange for transferring an income interest in his (decedent's) trust, the decedent (or his estate) may be deemed to have anticipated the receipt of ordinary income under Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168 (1941), and Commissioner v. Lake, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958). According to *Schwartz & Liker,* a bunching of ordinary income in the year in which the transfer is made could result. Further, if the value of the re-

mainder interest transferred by the surviving spouse is less than the value of the income interest received by her, she might be held to have realized a capital gain. *Schwartz & Liker, supra,* at 10–21 to –22.

Brawerman notes additional disadvantages with the widow's election life estate. *See Brawerman, supra,* 40 J. Taxation 116–17. He focuses primarily on the loss of control over the ultimate disposition of the property which the wife, as surviving spouse, must acknowledge in order to be able to amortize her life estate. A surviving spouse cannot simultaneously retain control over disposition of an entire estate and amortize ratable deductions from life estate income. Were she to attempt to retain some control by receiving a general power to appoint principal of her half of the community property and a limited power to appoint principal in the husband's half of the property (to be able to take into account events occurring after the husband's death which may influence the manner of disposition), the wife would not transfer an interest in her half when electing and would pay nothing for her life estate in the husband's half. She would therefore acquire the life estate in the husband's one-half interest by gift rather than purchase, would have no cost for the life estate and would therefore not be entitled to amortize.

Brawerman additionally notes that estate tax consequences attend the wife's election. Her half of the community property will be included in her estate at her later death because she has transferred her half of the property in trust and has retained a life estate. Even though the wife will be able to reduce the amount includable in her estate by the value of the husband's life estate in his half of the property at the date of election, her gross estate will still include income received from the husband's half of the property after his death. *Brawerman, supra,* 40 J. Taxation at 117.

**1239**

## VI. TAX ANALYSIS IN THIS CASE

The income, estate and gift tax laws are not in pari materia. They were enacted under different circumstances and are generally designed to address different situations. "Consideration" is a term which has been utilized to depict concepts the meaning of which can diverge when applied under the estate and gift tax laws as compared with the income tax laws. *Compare* 26 U.S.C. § 2043 *with* 26 U.S.C. § 1014. However, concepts utilized in one sphere may be applicable in another sphere. The real subject of the estate tax, for example, is not property but the shifting economic benefits of property. Vardell v. Commissioner, *supra,* 307 F.2d at 694 (Wisdom, J., dissenting).

Elections to take under a will have long been recognized as transactions in which the property surrendered is viewed as the consideration for the offer made in the will and accepted at the time of the execution of the will in a contemporaneous instrument or thereafter.[12] *See* Commissioner v. Siegel, *supra,* 250 F.2d 339; Chase National Bank, 25 T.C. 617 (1955), decided on other grounds sub nom., Commissioner v. Chase Manhattan, 259 F.2d 231 (5th Cir. 1958).

■■ Section 273 applies to an income interest in a trust. Maxfield, Capital Gains and Losses, 25 Tax L.Rev. 565, 577–78 (1970). Therefore, the property surrendered is a consideration for that which is accepted, and a binding contract occurs upon such acceptance. Commissioner v. Siegel, *supra.* In Vardell v. Commissioner, *supra,* a widow elected under her husband's will to receive a life estate in his property with the right to dispose of it at her death, the remainder interest passing to the descendant-trustees. The U. S. Court of Appeals for the Fifth Circuit there held that for purposes of the estate tax, the life estate received by the widow constituted consideration which was valued at the time of transfer. 307 F.2d 688; 26 U.S.C. § 2043.

## VII. CONCLUSION

■■ To this Court, the better result is to permit amortization. In a situation involving the widow's election where the taxpayer exchanges the remainder interest in her community property for a life interest in her husband's community property, what actually occurs can be characterized as part gratuitous disposition—part sale or exchange. Where the wife receives property worth more than the value of the property she transfers, the property received in excess should be viewed as a "bequest" from the husband which is not amortizable. But where the wife transfers property worth more than the value of that which she receives, she purchases property equivalent to the value of the "received" property and is deemed to have made a gift to the beneficiaries of the

12. In the instant case, the trust was set up long before the widow was put to an election. Indeed, the language used in the stipulation of facts indicates that the taxpayer had abandoned a claim to her community property long before decedent's death and was fully willing to have all the property placed in a trust. However, this Court concludes that the provisions of the trust were not intended to take effect until the date of the decedent's death and that, despite the widow's acquiescence in the trust arrangement inter vivos, for all practical purposes the transfer of property was not operable until the date of death. Thus, the transfer in this case operated just as it would when a widow elects at the date of the decedent's

death. There should be no difference in result merely because the wife gives up her interest inter vivos rather than at the time of election. *See* United States v. Gordon, 406 F.2d 332 (5th Cir. 1969). In the *Gordon* case, the Court of Appeals held that the inability to elect upon the husband's death was immaterial to the tax consequences of the wife who, with the husband, had established an irrevocable trust.

The crucial fact, as viewed by the appellate court, was that the widow took affirmative action resulting in a transfer of valuable property rights just as if she had been put to an election under the terms of her husband's will. 406 F.2d at 343.

**1240**

estate of, and should pay a gift tax on, the excess. That is what the taxpayer did in this case.

 The widow exchanges the remainder interest in her community property for the life interest in her husband's share of the community property. The widow may therefore amortize the income received from her husband's segment of the life estate. She remains fully taxable on income received from her own reserved life estate. Gist v. United States, *supra; Smith, supra*, 21 S.W.L.J. at 603.

The better result aside, this Court is persuaded by the available authorities that amortization should be permitted. This is so because the language of § 273 as applied by the Supreme Court in Lyeth v. Hoey permits it; because the analytical approach to § 273 utilized by the United States Court of Appeals for the Fifth Circuit in the *Early* case foreshadows such permission; and because the taxpayer here has satisfied the four-part *Gist* test adopted by the Ninth Circuit.[13]

 In the first instance, it is the language of a statute as written which must be construed. Elrick v. Commissioner, *supra*, 485 F.2d at 1051 n. 6. Interpreting § 273 to prohibit amortization in a case such as this one could only occur by permitting form to conquer substance. The instant taxpayer does not receive income from the subject life estate as the result of a "gift, bequest or inheritance". She has acquired the life estate after exchanging valuable property, the right to which was undisputedly hers at the time of the exchange. She therefore will be permitted to amortize the cost basis of life estate

payments received and reduce her taxable income by ratable annual deductions, pursuant to 26 U.S.C. § 167(h).

Judgment is hereby granted in favor of the taxpayer.

---

13. The taxpayer here elected to take under the will for her own benefit, and not for tax avoidance motives. Indeed, she has paid a gift tax as the result of the transfer and is liable for income tax on the trust income distributed to her.

The taxpayer had, under community property law, an existing and equal interest in the community property before the death of the decedent and certainly possessed such an interest at the time she contracted with the decedent to establish the trust in question. *See* note 10, *supra*.

All rights to the taxpayer's share of the community property were relinquished at the time of the exchange. The interest was relinquished as a condition to receiving the life estate in the decedent's share of community property. 296 F.Supp. at 529.